UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MARVIN    BRAUN    and    PENN
CHABROW, individually and on behalf
of others similarly situated,

        Plaintiffs,                    Case No:_____

vs.                                JURY TRIAL DEMANDED

MARRIOTT INTERNATIONAL, INC.,

        Defendant.

## CLASS ACTION COMPLAINT

Plaintiffs, MARVIN BRAUN and PENN CHABROW, individually and on behalf of others similarly situated, sue Defendant, MARRIOTT INTERNATIONAL, INC., pursuant to Rule 23 of the Federal Rules of Civil Procedure, and allege as follows:

## NATURE OF THE ACTION

1.     Marriott International, Inc. ("Marriott") is an American multinational, diversified hospitality company that manages and franchises a broad portfolio of hotels and related lodging facilities, and is considered one of the largest hotel chains in the world with more than 5,700 properties in over 110 countries and territories globally, accommodating over 1.1 million rooms.

2.    On or about September 13, 2016, Marriott acquired Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") to become the world's largest hotel chain.

3.    Prior to merging with Marriott, Starwood operated its own guest reservation database.  After the merger, Marriott continued to own and operate Starwood properties and the Starwood guest reservation database.

4.    The relief sought herein addresses a data security incident involving the Starwood guest reservation database, which contained guest information relating to any person who made a reservation at a Starwood property.  For ease of reference, and as a result of the merger, any reference to "Marriott" or "Marriott properties" herein, includes Starwood and Starwood properties.

5.    Approximately 500 million people have stayed at Marriott properties since 2014.

6.    As part of the reservation and booking process for staying at a Marriott property, Marriott's guests create, maintain, and update profiles containing substantial amounts of personal information, including their names, birthdates, addresses, locations, email addresses, and payment card information. Additionally, for international travel, Marriott requires guests to provide their passport information, including passport numbers. This passport information, along with the above-mentioned personal information, is collectively referred to herein as "personal identifying information" or "PII".

7.    This case involves the data breach Marriott announced on November 30, 2018, wherein the PII of up to 500 million guests nationwide was exposed due to

a flaw in Marriott's reservation system and database systems dating back to 2014, which allowed hackers to take over guest accounts and siphon off PII for illegal purposes. These individuals are now subject to the well-known risks and harms associated with such a breach, including identity theft and the loss of privacy in their personal information.

8.     According to Marriott's announcement, the data breach relates to reservations made for Starwood properties on or before September 10, 2018.

9.     For example, stolen names and addresses can be used to open unauthorized credit cards, bank accounts, mortgages, or file fraudulent tax returns.

10.     Although federal and state laws require that Marriott protect and secure its customers' confidential data, Marriott failed to comply with its legal obligations to do so.   In fact, the breach of its databases remained completely undetected for four years.

11.     Plaintiffs bring this putative class action to seek redress on behalf of all Marriott former and current customers whose personal identifying information have been compromised as a result of Marriott's failure to adequately protect and secure its systems, including the Starwood guest reservation database.

## PARTIES

12.     Plaintiff Marvin Braun is a citizen of Florida who, at all relevant times, has resided in Miami, Miami-Dade County, Florida. Prior to September 10, 2018, Plaintiff Braun made reservations at Marriott properties, including Starwood

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

properties, such as the St. Regis and Sheraton, entrusting Marriott with aggregating his PII.

13.    Plaintiff Penn Chabrow is a citizen of Florida who, at all relevant times, has resided in Miami, Miami-Dade County, Florida. Prior to September 10, 2018, Plaintiff Chabrow made reservations at Marriott properties, including Starwood properties, such as Westin, W Hotels, Le Méridien, and Sheraton.

14.    Defendant Marriott International, Inc. is a Delaware corporation with a principal executive office located at 10400 Fernwood Road, Bethesda, Maryland. Defendant owns and operates over 435 hotels within the State of Florida, including within the Southern District of Florida.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one member of the proposed class is a citizen of a State different from Defendant.

16.    This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §§ 48.193(1)(a)(1) and (6), because it has purposefully availed itself of the privilege of conducting business in the State of Florida; some of the actions giving rise to the Complaint took place in this District, including causing injury to property in this state arising out of Defendant's acts and omissions outside this state; and at or about the time of such injuries, Defendant was engaged in

solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

17.  Venue is proper in this judicial District under 28 U.S.C. § 1391(b)(1), because Defendant resides in this judicial District and 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this District and Defendant has caused harm to Plaintiffs and Class members in this District.

## GENERAL ALLEGATIONS

### A.   As a Multinational Hospitality Company, Marriott Collects and Stores Sensitive and Personal Identifying Information.

18.  As a multinational hospitality company with greater than 5,700 rooms in more than 110 countries, Marriott collects, receives, accesses, and maintains possession of its customers' PII, including names, dates of birth, Social Security numbers, passport information, addresses, demographic information, and other data collected in the normal course of providing and obtaining payment for hospitality services.  Marriott stores such information in electronic form, including in the Starwood guest reservation database.

### B.   Marriott Promises to Protect Customers' Personal Information.

19.  According to its Global Privacy Statement ("Privacy Statement"), Marriott creates a record of each time a customer makes a reservation, purchases goods and services from its websites or applications, communicates with Marriott or

otherwise connects with Marriott or posts to Marriott's social media pages, signs up for a newsletter or participates in a survey, contest or promotional offer.[1]

20.    Marriott also collects PII when a customer visits their properties or uses on-property services and outlets, such as restaurants, concierge services, health clubs, child care services, and spas.[2]

21.    Marriott also promises in its Privacy Statement to protect customers' data, as required by law:

> **Collection of Personal Data**
> "Personal Data" are data that identify you as an individual or relate to an identifiable individual.
>
> At touchpoints throughout your guest journey, we collect Personal Data in accordance with law[.][3]

### C.    Marriott has a Duty to Protect and Secure Customers' Personal Identifying Information From Unauthorized Access.

22.    Section 5(a) of the Federal Trade Commission ("FTC") Act prevents Marriott from using "unfair or deceptive acts or practices in or affecting commerce." The FTC has found that inadequate data security practices can constitute unfair or deceptive practices that violate Section 5.

23.    The state of Florida also requires companies to maintain electronic PII. Among other things, Florida requires Marriott to (1) take reasonable measures to protect and secure data in electronic form containing PII; (2) take reasonable measures to protect and secure data in electronic form containing PII; (3) provide

---

[1] *Marriott Group Global Privacy Statement*, https://www.marriott.com/about/privacy.mi.
[2] *Id.*
[3] *Id.*

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

notice to consumers and consumer reporting agencies when a data security incident occurs that compromises PII. Fla. Stat. § 501.171.  Other states in which Marriott does business have similar, if not stricter, requirements, for securing personal and medical information and data breach notification, including Maryland, California, Kentucky, Michigan, and Washington. *See, e.g.*, Md. Code. §§ 13-101, *et seq.*; Cal. Civ. Code §§ 56, *et seq.*; Cal. Civ. Code §§ 1798.80, *et seq.*; Ky. Rev. Stat. Ann. §§ 50-7a02(a), *et seq.*; Mich. Comp. Laws Ann. §§ 445.72(1), *et seq.*; Wash. Rev. Code §§ 19.255.010(1), *et seq.*; Wash. Rev. Code §§ 70.02.045, *et seq.*

24.    In addition to their obligations under federal and state laws, Marriott owed a common law duty to the Plaintiffs and members of the Class to protect PII entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

25.    Marriott further owed a duty to Plaintiffs and Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts, including those generated by its own security systems.

26.    Marriott owed a duty to Plaintiffs and members of the Class to provide and maintain reasonable security over PII, including security consistent with industry standards and requirements.  Marriott owed a duty to Plaintiffs and members of the Class to design, maintain, and test its security systems and

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

networks to ensure that PII in Marriott's possession was adequately secured and protected.

**D.   Marriott Failed to Properly Secure Confidential Information, Which Directly Resulted in the Data Breach.**

27.   On November 30, 2018, Marriott announced a previously unreported attack on its network, that exposed the PII of 500 million users (the "Data Breach").

28.   Marriott claims it discovered the vulnerability on September 8, 2018, "from an internal security tool regarding an attempt to access the Starwood guest reservation database," and "quickly engaged leading security experts to help determine what occurred."[4]

29.   During Marriott's investigation beginning on September 8, 2018, Marriott learned that hackers had access to the Starwood guest reservation database since 2014.

30.   In other words, the hack into Marriott's database—and the resulting Data Breach—remained undetected by Marriott for four years.

31.   Of the 500 million guests who could have been affected by the Data Breach, approximately 327 million of the affected guests include some combination of their name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account information, date of birth, gender, arrival and departure information, reservation dates, communication preferences,

---

[4] Kroll, *Starwood Guest Reservation Database Security Incident*, https://answers.kroll.com/.

and other PII. For "some" of these affected guests, additional information, such as payment card numbers and payment card expiration dates was accessed.[5]

32.     Despite Marriott's use of AES-128 encryption methods, the payment card numbers and payment card expiration dates may have been compromised, because the encryption method requires two components for decryption, and both may have been taken.[6]

33.     For the remaining approximately 173 million of the affected guests, the information was limited to name, mailing address, email address, and "other information," that Marriott has not expanded upon or provided more details, leaving consumers without full knowledge of the extent of the breach of their information.[7]

34.     To date, Marriott has provided little, if any other details on the cause, nature, or extent of the Data Breach.

35.     Marriott still lacks the safeguards and protections for its customers' PII, and that information remains at risk indefinitely, until Marriott is compelled to secure the PII stored on millions of United States citizens.

36.     Despite its promises and legal obligations, Marriott did not provide reasonable or adequate security to protect the PII in its database. In failing to do so, Marriott violated its obligations under federal and state laws, to protect and safeguard the privacy of Plaintiffs' and Class members' PII.

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

37.    The Data Breach occurred as a direct result of the inadequate security systems Marriott used to protect Plaintiffs' and Class members' PII.

**E.    The Exposed Individuals Have Suffered and Will Continue to Suffer Substantial Harm as a Result of the Data Breach.**

38.    Plaintiffs' and Class members' PII is valuable. In addition, consumer victims of data breaches are much more likely to become victims of identity fraud.

39.    Identity theft victims must spend countless hours and large amounts of money guarding against or repairing the impact to their credit and reputation.

40.    PII is such a valuable commodity that once the information has been compromised, criminals can trade the information on the cyber black market for years.

41.    The injuries suffered and likely to be suffered by Marriott's customers are and will be a direct and proximate result of the Data Breach, including:

(a)  theft of their personal and financial information;

(b) loss or delay of tax refunds as a result of potentially fraudulently filed tax returns;

(c) costs associated with the detection and prevention of identity theft and unauthorized use of their PII and financial, business, banking, and other accounts;

(d) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling credit cards, purchasing credit

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

monitoring and identity theft protection services, the imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, including phishing emails and phone scams;

(e) the imminent and certain impending injury flowing from fraud and identity theft posed by their PII being placed in the hands of hackers;

(f) damages to and diminution in value of their PII entrusted to Marriott for the sole purpose of obtaining hospitality and related services from Marriott;

(g) money paid to Marriott for hospitality and related services during the period of the Data Breach because Plaintiffs and Class members would not have obtained said services from Marriott had it disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' PII; and

(h) overpayments to Marriott for hospitality and related services purchased, in that a portion of the amount paid by Plaintiffs and members of the Class to Marriott was for the costs for Marriott to take reasonable and adequate security measures to protect the Plaintiffs' and Class members' PII of which Marriott failed to do.

42. As a result of Marriott's delay in notifying consumers of the Data Breach—nearly three months following the discovery—the risk of fraud for Plaintiffs and Class members has been driven even higher.

43.     Thus, Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and the Class are incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, regardless of whether such charges are ultimately reimbursed by banks and credit card companies.

### F.     Marriott's Offer of Credit Monitoring and Passport Cost Reimbursement Are Inadequate.

44.     Marriott's offer of one year of free enrollment in "WebWatcher," which monitors internet sites where PII is shared and generates alerts if evidence of a consumer's PII is found, is inadequate, because PII may exist on the web for years before it is used. With only one year of monitoring, and no form of insurance or other protection, Plaintiffs and Class members remain unprotected from the real and long-term threats against their PII.[8]

45.     Similarly, Marriott's offer to reimburse a customer's costs associated with obtaining a new passport if there was evidence of fraud, is inadequate, because the PII taken from the passport may exist on the web for years before it is used.

46.     Therefore, the "monitoring" service and passport cost reimbursement are inadequate. Plaintiffs and Class members have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

---

[8] *Id.*

## PLAINTIFFS' INDIVIDUAL ALLEGATIONS

47.    Plaintiff Marvin Braun is a resident of Miami in Miami-Dade County, Florida.  Plaintiff Braun paid for and received hospitality services from Marriott. Marriott collected and received Plaintiff Braun's PII and maintained it in its database.   On or about November 30, 2018, Plaintiff Braun was notified that Marriott compromised the PII of millions in the Data Breach, including potentially his name, date of birth, Social Security number, address, and passport information. Plaintiff Braun must now engage in stringent monitoring of his financial accounts and tax filings, among other things.  As a result of the Data Breach, Plaintiff Braun will expend countless hours contacting the various relevant government, credit and financial agencies to address issues arising from the breach, and will incur out-of-pocket expenses for credit monitoring and identity theft protection services.

48.    Plaintiff Penn Chabrow is a resident of Miami in Miami-Dade County, Florida.  Plaintiff Chabrow paid for and received hospitality services from Marriott. Marriott collected and received Plaintiff Chabrow's PII and maintained it in its database.   On December 3, 2018, Plaintiff Chabrow was notified via email from Starwood Hotels that Marriott compromised the PII of millions in the Data Breach, including potentially his name, date of birth, Social Security number, address, and passport information.  Plaintiff Chabrow must now engage in stringent monitoring of his financial accounts and tax filings, among other things.  As a result of the Data Breach, Plaintiff Chabrow will expend countless hours contacting the various relevant government, credit and financial agencies to address issues arising from

the breach, and will incur out-of-pocket expenses for credit monitoring and identity theft protection services.

## CLASS ACTION ALLEGATIONS

49.    Plaintiffs brings this action on behalf of themselves and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure.   The requirements of Rule 23(a), (b)(2) and (b)(3), and (c)(4) are each met with respect to the Class defined below.

50.    Plaintiffs seek to represent the following Class:

**Nationwide Class:**   All residents of U.S. states whose Confidential Information was maintained on the Marriott database and was compromised as a result of the Data Breach announced by Marriott on November 30, 2018.

51.    The Class excludes:  (1) Marriott, any entity in which Marriott has a controlling interest, any entity which has a controlling interest in Marriott, and their respective legal representatives, officers, directors, members, managers, employees, assigns, subsidiaries, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) any juror assigned to this action; and (4) Class Counsel.

52.    **Numerosity**.  Members of each of the Class are so numerous that individual joinder of all members is impracticable.  Although the exact number of Class members is unknown to Plaintiffs at this time, there are at least approximately 500 million individuals in the Class.  Class members will be easily identified through Marriott's records.

53. **Existence of Common Questions of Law and Fact.** Common questions of law and fact exist as to all Class members, and those questions predominate over any questions that may affect individual Class members. These common legal and factual questions include:

(a) Whether Marriott failed to adequately store and secure Plaintiffs' and Class members' PII;

(b) Whether Marriott's computer system and data security practices used to protect Plaintiffs' and Class members' PII violated federal, state and local laws, or Marriott's duties;

(c) Whether Marriott engaged in unfair, unlawful, or deceptive practices by failing to safeguard properly and/or as promised Plaintiffs' and Class members' PII;

(d) Whether Marriott acted negligently in failing to safeguard Plaintiffs' and Class members' PII;

(e) Whether implied or express contracts existed between Marriott, on the one hand, and Plaintiffs and Class members, on the other;

(f) Whether Defendant's conduct described herein constitutes a breach of their implied or express contracts with Plaintiffs and Class members;

(g) Whether Plaintiffs and Class members are entitled to damages, restitution, or other monetary relief as a result of Marriott's wrongful conduct; and

(h) What equitable or injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiffs and Class members.

54. **Typicality.** Plaintiffs' claims are typical of the claims of the Class, because Plaintiffs and Class members entrusted their PII to Marriott and their PII was compromised as a result of the Data Breach. Plaintiffs and Class members sustained damages as a result of Marriott's uniform wrongful conduct.

55. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the members of the Class. Further, Plaintiffs have retained counsel who are competent and experienced in complex class action litigation, and Plaintiffs and their counsel intend to prosecute this action vigorously on behalf of the Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the Class members.

56. **Rule 23(b)(3) Predominance and Superiority.** Questions of law and fact common to the Class members predominate over any questions affecting only individual members, and a class action is superior to all other available means for fairly and efficiently adjudicating the controversy. In this regard, the interests of the Class members in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a company as large as Marriott compared to the amount of individual damages. Individualized litigation also presents a potential for inconsistent or contradictory

judgments, would establish incompatible standards of conduct for Marriott, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties.

57.   **Rule 23(b)(2) Certification.**   Certification is also appropriate under Rule 23(b)(2), because Marriott has acted or refused to act on grounds that apply generally to the Plaintiffs and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class members, and making final injunctive relief or corresponding declaratory relief appropriate respecting the proposed Class as a whole.  Marriott's practices challenged herein apply to and affect the Class member uniformly, and Plaintiffs' challenge to those practices applies to Marriott's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiffs.

## CAUSES OF ACTION

### COUNT I
### (Negligence)

58.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 57 of the Complaint as if fully set forth herein.

59.   Marriott had a duty to exercise reasonable care to protect and secure Plaintiffs' and Class members' PII.

60.     Through its acts and omissions, Marriott breached its duty to use reasonable care to protect and secure Plaintiffs' and Class members' PII by employing substandard or non-existent data and cybersecurity practices.

61.     It was reasonably foreseeable, particularly given legal requirements governing consumer data protection and the growing number of data breaches of PII that the failure to reasonably protect and secure Plaintiffs' and Class members' PII would result in an unauthorized party gaining access to Marriott's networks, databases, or computers that stored or contained Plaintiffs' and Class members' PII.

62.     Marriott's negligence directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class members' PII, and Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of Marriott's conduct.

63.     Plaintiffs and Class members seek damages and other relief as a result of Marriott's negligence.

## COUNT II
### (Negligence Per Se)

64.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 57 of the Complaint as if fully set forth herein

65.     As set for the above, pursuant to the FTC Act and Florida law, Marriott was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class members' PII.

66.     Marriott breached its duties by failing to employ industry standard data and cybersecurity measures that complied with those laws.

67.     Marriott's failure to comply with applicable federal and state laws constitutes negligence per se.

68.     It was reasonably foreseeable, that Marriott's failure to reasonably protect and secure Plaintiffs' and Class Members' PII in compliance with applicable laws would result in an unauthorized party gaining access to Marriott's networks, databases, or computers that stored or contained Plaintiffs' and Class members' PII.

69.     Marriott's   negligence   directly   and   proximately   caused   the unauthorized access and disclosure of Plaintiffs' and Class members' PII, and Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of Marriott's conduct.

70.     Plaintiffs and Class members seek damages and other relief as a result of Marriott's negligence.

## COUNT III
### (Breach of Contract)

71.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 57 of the Complaint as if fully set forth herein.

72.     Marriott provides hospitality and related services to Plaintiffs and each of the Class members pursuant to the terms of its contracts, including the Privacy Statement, the terms of which are uniform as to all members of the Class.

73.     As consideration, Plaintiffs and Class members paid money to Marriott for hospitality and related services. Part of the service provided by Marriott, as

reflected in the Privacy Statement, included the secure maintenance and storage of Plaintiffs' and Class Members' PII.

74.   Marriott breached its contracts with Plaintiffs and Class Members, including the Privacy Statement, by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' PII and allowing its disclosure for purposes not required or permitted under the contracts.

75.   Plaintiffs and Class Members have and will suffer damages as a result of Marriott's breach, including paying for data and cybersecurity protection that they did not receive, as well as incurring the above-described harms and injuries arising from the Data Breach now and in the future.

<u>COUNT IV</u>
(Unjust Enrichment)

76.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 57 of the Complaint as if fully set forth herein.

77.   Plaintiffs and Class Members conferred a benefit on Marriott by paying for data and cybersecurity systems to protect their PII that they did not receive, and Marriott was aware of the benefit conferred and voluntarily accepted and retained that benefit.

78.   It would be inequitable for Marriott to retain the ill-gotten benefits it received from Plaintiffs and Class Members because the data protection and security Plaintiffs and Class Members received was not what Marriott promised.

79.    As a direct and proximate result of Marriott's misrepresentations and omissions, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully requests judgment against Marriott:

A.  Certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

B.  Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining Marriott from continuing the unlawful practices as set forth above;

C.  Awarding actual, incidental, statutory, or punitive damages, as appropriate;

D.  Awarding pre-judgment and post-judgment interest to the extent allowed by law; and

E.  Awarding such further relief as the Court deems just and proper.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, FL 33134 - Telephone (305) 476-7400/Facsimile (305) 476-7444

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable on behalf of themselves and all similarly situated persons.

DATED: December 6, 2018.

### COLSON HICKS EIDSON, P.A.

255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476.7400
Facsimile: (305) 476.7444


By:   s/ Julie Braman Kane
       Julie Braman Kane
       Florida Bar No. 980277
       julie@colson.com
       Francisco R. Maderal
       Florida Bar No. 41481
       frank@colson.com
       Lazaro Fields
       Florida Bar No. 1004725
       laz@colson.com
       Curtis Miner
       Florida Bar No. 885681
       curt@colson.com
       Roberto Martinez
       Florida Bar No. 305596
       bob@colson.com
       Lewis Eidson
       Florida Bar No. 151088
       mike@colson.com


*Attorneys for Plaintiffs*